**Lloyd HILL, Plaintiff-Appellant,**

**v.**

**IRON WORKERS LOCAL UNION NO. 25 et al., Defendants-Appellees.**

**No. 74–2299.**

United States Court of Appeals, Sixth Circuit.

Aug. 19, 1975.

---

Lynn L. Lower, Charles J. Taunt, Farmington Hills, Mich., for plaintiff-appellant.

Sheldon L. Klimist, Miller, Klimist, Cohen, Martens & Sugerman, Murray A. Gorchow, Detroit, Mich., for defendants-appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and ENGEL, Circuit Judges.

EDWARDS, Circuit Judge.

Plaintiff-appellant Hill, who describes himself as a "nonunion iron worker," filed a complaint against defendant-appellee, Local 25 of the Iron Workers Union. He alleged in five counts that Local 25 was depriving him of membership in the union, the opportunity to work in his trade, and the benefits of a pension system into which he had paid the required contributions. He also alleged (or implied) that all of these acts were in violation of the labor-management·contract in the industry in which he had worked and desired to work, and that, hence, he was entitled to a remedy under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1970).

Local 25 responded with a motion to dismiss, contending that the court had no jurisdiction in the premises. The District Court thereupon dismissed plaintiff's complaint with an opinion and a judgment holding that it had no jurisdiction. The District Judge's reasoning was as follows:

> From a fair reading of the entire Collective Bargaining Agreement, the Court finds no contract provisions that would support plaintiff's belief as to the employers' freedom to hire without seeking or obtaining clearance from defendant Local Union. Nor do the collective bargaining agreement provisions create a third-party beneficiary status for the plaintiff by any language contained therein. The only article of the collective bargaining agreement that touches on plaintiff's beliefs is that entitled "Union Security," which is Article Three of the contract. This article provides in pertinent part: "All employees who are

members of the . .· . Association . . . shall be required to remain members as a condition of employment ·· . . All employees may be required to become and remain members of the Association . . . as a condition of employment after the seventh day following the dates of their employment . . ." Upon reading the "Union Security" provision as well as the remainder of the contract, the Court must conclude that it was never the intention of the parties to include plaintiff, a mere applicant for employment, as a beneficiary of their agreement. By the heading of Article Three of the agreement (i. e., "Union Security"), it is obvious that an outsider or a mere applicant for employment was not intended to be protected by the provision. The intent of this article was to protect the defendant Local Union.

\*　　\*　　\*　　\*　　\*　　\*

However, the present plaintiff is not entitled to the benefit of the above rules of law for the reason that evidence clearly indicates that plaintiff was not in the same class or category as the members of defendant Local Union, nor a member of the employee class that defendant Local Union must represent. The fact that plaintiff was an outsider—not a member of the union nor even an employee, but only an applicant for employment—rather clearly demonstrates that defendant Local Union did not represent plaintiff, persons like plaintiff, or those in plaintiff's class or category while negotiating the collective bargaining agreement. The Court further finds that the interest of plaintiff is nowhere represented in the contract, and the parties did not intend to benefit plaintiff or persons like plaintiff when negotiating said agreement.

In conclusion, the federal courts have subject matter jurisdiction in cases that involve violations of collective bargaining agreements brought under Section 185 of Title 29, United States Code; and individual employees

as third-party beneficiaries to collective bargaining agreements may bring actions to enforce said agreements under the above statute, but the matter presently before the Court is not such an action.

The remainder of the complaint does not state any jurisdictional allegations that would allow this Court to have subject matter jurisdiction of this action under Title 29, U.S.C., Section 185. Since the allegations of Count Three fail to state sufficient grounds for the Court to take subject matter jurisdiction over the action under 29 U.S.C. § 185, the remainder of the complaint cannot be considered.

Without passing judgment on the truth or falsity of appellant's allegations, we reverse for trial as to the counts of appellant's complaint which serve to allege 1) unlawful interference with his right to work in his trade, and 2) the denial of his benefits (if any) under the pension plan in his industry.[1] We believe that these claims[2] allege violations of the union-management contract and that, hence, the District Court has jurisdiction to hear them under § 301 of the Labor Management Relations Act. *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Beriault v. Local 40, ILWU,* 501 F.2d 258 (9th Cir. 1974); *Chasis v. Progress Mfg. Co.,* 382 F.2d 773 (3d Cir. 1967). *See also Motor Coach Employees v. Lockridge,* 403 U.S. 274, 298–99, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971).

The District Judge's reasoning is not without logic and we cannot be certain that the Supreme Court in this difficult area of the law will view the matter as we view it now. *See generally Motor Coach Employees v. Lockridge, supra.* But we are confident that it will be better to present these issues (if they survive trial) upon a record which includes findings of fact rather than mere allegations.

The collective bargaining agreement involved in this dispute has a number of provisions which appear to be applicable to employees working under the contract, *whether they are members of the union or not:*

## ARTICLE I

### PREAMBLE

This agreement is entered into by collective bargaining to prevent strikes and lockouts and to facilitate peaceful adjustment of grievances and disputes between Employer and Union in this trade and to prevent waste, unnecessary and avoidable delays and expense, and, so far as possible, *to provide for labor's continuous employment, such employment to be in accordance with the conditions herein set forth* and at wages herein agreed upon; also, that stable conditions may prevail in the building industry and building costs may be as low as possible, consistent with fair wages and conditions, and further, the establishment of the necessary procedures by which these ends may be accomplished.

\* \* \* \* \* \*

### ARTICLE III

### UNION SECURITY

All employees who are members of the International Association of Bridge, Structural and Ornamental Iron Workers on the effective date of this agreement shall be required to remain members of the association in good standing as a condition of employment during the term of this

---

1. As appellees contend, the Iron Workers Local No. 25 Pension Fund is a necessary party to any effective relief as to this issue. On remand appellant should be allowed to amend his complaint to add this party. See 29 U.S. C.A. § 1132(a) & (e) (1975).

2. Appellant's pleading founds his claims exclusively upon § 301 and makes no mention of the union's duty as exclusive bargaining agent

to represent fairly both union members and nonunion members working under the union's jurisdiction. *See Steele v. Louisville & Nashville R. R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); *Smith v. Sheet Metal Workers Local 25,* 500 F.2d 741 (5th Cir. 1974). *See also Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

agreement. All employees may be required to become and remain members of the Association in good standing as a condition of employment after the seventh day following the dates of their employment, or the effective date of this agreement, whichever is later.

\*    \*    \*    \*    \*    \*

## ARTICLE XVII

**FRINGE BENEFIT FUNDS**

1. Effective for all work performed on and after May 1, 1967, an employer shall make contributions to the various Fringe Benefit Funds hereinafter described in the respective amounts and under the respective conditions set forth below.

\*    \*    \*    \*    \*    \*

4. PENSION FUND. For each employee covered by this agreement, an employer shall contribute to the "Iron Workers' Local No. 25 Pension Fund" an amount equal to the percentages as outlined in Article XIII.

\*    \*    \*    \*    \*    \*

## ARTICLE XXXVII

**EQUAL OPPORTUNITY CLAUSE**

*Both parties signatory to this Agreement, agree that* they will in no way discriminate against any person because of race, creed, color, national origin or religion, and that *equal employment opportunities will be provided to all workmen based on qualifications alone* and in accordance with the President's Executive Orders and Amendments thereto, as well as the provisions contained in Title VII of the Civil Rights Act of 1964 and Federal Regulation 29-CFR, Part 30. (Emphasis added.)

The provision in Article XXXVII which provides "equal employment opportunities . . . to all workmen based on qualifications alone" seems at least arguably to be a contract provision for the benefit of persons situated as the plaintiff alleges himself to be. Article III, of course, is a typical union security clause. But it indicates clearly that employers may hire in the first instance without proof of union membership provided the person hired becomes a member of the union within seven days.

As to plaintiff's claim of violation of his contract rights to employment based on qualifications and availability of work and his claims of violations of his pension rights arising under Articles XIII and XVII of the labor-management contract, we reiterate that he has stated a cause of action under § 301 of the Labor Management Relations Act. *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Beriault v. Local 40, ILWU,* 501 F.2d 258 (9th Cir. 1974). The fact that plaintiff's claims of violation of his employment rights under the contract might also represent an unfair labor practice within the jurisdiction of the National Labor Relations Board does not preclude a § 301 action. *Motor Coach Employees v. Lockridge, supra* 403 U.S. at 298–300, 91 S.Ct. 1909; *Humphrey v. Moore, supra; Smith v. Evening News Ass'n,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

In these cases the Supreme Court carved out an exception to the preemption doctrine of *San · Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and *Plumbers Local 100 v. Borden,* 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963), which exception is specifically applicable to § 301 claims.

The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.