Vivian E. HAZEN, Individually and as Administratrix of the Estate of Richard M. Hazen, Deceased, Plaintiff-Appellant,

v.

WESTERN UNION TELEGRAPH COMPANY, a New York Corporation, Defendant-Appellee.

No. 74–1997.

United States Court of Appeals, Sixth Circuit.

July 3, 1975.

Joseph Levin, Dice, Sweeney & Sullivan, Detroit, Mich., William M. Havey, Mt. Clemens, Mich., for plaintiff-appellant.

Jon P. Desenberg, Moll, Desenberg, Purdy, Glover & Bayer, Detroit, Mich., for defendant-appellee.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

The widow of a deceased employee, suing as personal representative of her husband's estate and as his designated beneficiary, brought this action against her husband's employer for benefits which she claimed under a collective bargaining agreement in force at the time of his death. There was no allegation or showing that the union which negotiated the agreement was guilty of unfair representation or bad faith in failing to prosecute the plaintiff's claim as a grievance through the final step of binding arbitration. The district court held that such a showing was required for the plaintiff to maintain her action and granted the defendant's motion for summary judgment and dismissed the action. We reverse.

Richard M. Hazen had been an employee of Western Union for 43 years and was manager of its Mt. Clemens, Michigan office at the time of his death on July 20, 1972. While Richard Hazen was on sick leave, Western Union permanently closed the Mt. Clemens office on June 13, 1972. At all times pertinent to the decision in this case there was in effect a collective bargaining agreement between the Western Union Telegraph Company and United Telegraph Workers, AFL–CIO, the provisions of which were applicable to the Mt. Clemens office. In section 22.15 of the contract it is provided that "[e]mployees subject to force-reduction because . . . (3) They have been displaced because a city main or branch office is closed or the hours of a District main or branch office are reduced or the office is closed, shall be entitled to all options of Article 24." Article 24 provides, inter alia, that "[a]n employee subject to force-reduction furlough shall have the following options: (1) Severance of pay in conformance with Article 23 . . .." Article 23 provides several options which are "effective at the end of a force-reduction furlough notice." Among these options is severance pay as scheduled in Article 23. It is provided in Article 23.07 that: "Should an employee who is entitled to severance pay die before he has received payment of such pay, the amount due shall be paid over by the Company to his or her designated beneficiary or estate, provided claim is made on the Company within one year from the date of death."

On July 28, 1972, eight days after her husband's death, the plaintiff wrote to Western Union as follows:

According to union contract between Western Union Telegraph Workers (AFL–CIO), Article 23, section 23.07 page 31 of the contract book, I am entitled to Richard M. Hazen's severance pay, being as I am his beneficiary.

The letter went on to recite Mr. Hazen's period of service, the date of his death and the statement that " . . . thus Mr. Richard Hazen would have been entitled to severance pay, which he had calculated to be around the figure of $35,697.60 before deductions." A copy of the letter was sent to the president of the union local who addressed a letter to Western Union at Detroit urging the payment of Mrs. Hazen's claim. On August 10, 1972 the area manager of Western Union replied directly to Mrs. Hazen and declined to pay the claim for severance pay. Mrs. Hazen made no further demands on Western Union, but the regional president of the union made a demand on the director of employee relations for the company in Chicago and this was rejected. The national president of the union then made a demand on the vice-president for employment relations of Western Union in New York and this demand was likewise rejected.

On March 12, 1973, Mrs. Hazen, suing as the widow and personal representative of the estate of Richard Hazen, brought this action in which Western Union is the only defendant. The juris-

dictional statement of the complaint referred only to the diversity of citizenship of the parties and the claim is stated as being for "breach of contract for severance pay benefits as contained in the existing contracts between Western Union Telegraph Company, its employees, and entered into on behalf of the employees by the United Telegraph Workers, AFL–CIO . . .." Plaintiff recited the terms of the contract with respect to the closing of local offices and stated that the office in Mt. Clemens " . . . and its employees had been notified of the furlough force reduction and the fact that their office was closing, which entitled the employees therein to be eligible for their severance pay as a result of the closing of the office." It was further alleged that Mr. Hazen was subject to furlough force reduction and that the plaintiff was entitled to claim under Article 23.07 of the contract. The prayer of the complaint was for $35,-697.60 damages. A jury trial was demanded.

Before the defendant responded to the complaint the plaintiff filed an amendment in which she stated that her claims "do not fall within the Grievance and Arbitration Procedures set forth in Articles 4 and 5" of the collective bargaining agreement, that her claims are not grievances, that neither the union nor anyone else ever filed a grievance with respect to these claims and that there was no provision in the contract by which the plaintiff could assert and pursue her claims through the grievance procedure of the contract. The amended complaint then stated that the union had arbitrarily refused to assert and pursue the plaintiff's claims through the grievance and arbitration procedures of the contract even though the claims were considered meritorious. The amended complaint concluded as follows: "Plaintiff actually has no 'administrative remedies' under the Contract and, to whatever extent she might be thought to have such administrative remedies, she has exhausted those administrative remedies and it would be futile for her to pursue

the claims set forth in this Complaint through any such imagined administrative remedies."

The defendant then made a motion to dismiss for a lack of jurisdiction over the subject matter. Following briefing and oral argument this motion was denied. In support of its motion to dismiss, the company argued that the plaintiff had failed to utilize the grievance procedure of the collective bargaining agreement and therefore was precluded from suing for severance pay. The company also filed with its brief copies of four pieces of correspondence between the company and the union concerning the company practice with respect to placing an employee on force-reduction furlough who is on sick leave at the time such force reduction takes place. This exchange of correspondence took place between July 6, 1950 and August 8, 1950 and is nowhere referred to in the contract of June 1, 1971 which was in effect at the time of the events which led to this law suit. In its brief in support of its motion to dismiss, the company stated that an "arrangement" had been agreed to in 1950 between the union and the company by which a person on sick leave would not be placed on force-reduction furlough because to have done so would have made that person ineligible for further sick leave benefits. In her brief in opposition to the motion to dismiss plaintiff noted that the company had only argued the issue raised in the amended complaint, that is that the union had arbitrarily refused to assert and pursue her claims through the grievance and arbitration procedures of the contract.

In its answer the company denied that plaintiff was a "designated beneficiary," or that Richard Hazen was an employee "actively involved" at the time the office was closed. Since he did not return from sick leave thereafter it was asserted that he had no option to elect severance pay. The answer admitted the allegation that the Mt. Clemens office and its employees had been notified of the furlough force reduction and the fact

that their office was closing but denied that this entitled an employee on sick leave who never returned to be eligible for severance pay.

The company then filed a motion for summary judgment asserting for the first time that plaintiff's letter to the company on July 28, 1972 constituted the filing of a grievance by her. It was claimed that the subsequent letters from union officers to various officers of the company constituted appeals under the grievance procedure which stopped short of the final step of arbitration. On this motion the parties argued the meaning of the "fair representation" requirement of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and interpreted by this court in Dill v. Greyhound Corp., 435 F.2d 231 (6th Cir. 1970). The district court concluded that in the absence of bad faith by the union, which plaintiff conceded she could not prove, the union's failure to demand arbitration of a claim which it characterized as "meritorious" was not a failure of fair representation.

Though the plaintiff pled "arbitrariness" by the union in her amended complaint and argued the matter of unfair representation and exhaustion of remedies in the district court, it is not clear from this record that she ever abandoned the claim of her original complaint that she was suing as a third party beneficiary of the collective bargaining agreement and asserting a "claim" which was not subject to the grievance and arbitration procedure of the contract. In arguing the questions of exhaustion and unfair representation she was merely meeting the arguments made by Western Union in support of its motion to dismiss and its motion for summary judgment. The court never addressed the issue of whether a person who is not an employee may bring a direct action against the employer, without regard to grievance procedures, asserting rights which the plaintiff acquired, either as personal representative or beneficiary, solely by reason of the death of an employee. In its memorandum opinion the only cases cited by the district court are Vaca v. Sipes, *supra*, and Dill v. Greyhound Corp., *supra*. However, neither of these cases speaks to the situation in the present case where the plaintiff is one to whom the union owes no duty of fair representation. Throughout the *Vaca* opinion, in referring to the union's duty of fair representation and the requirement that a person exhaust his contractual remedies before bringing an action in the courts, the plaintiff is invariably referred to as "employee."

The exclusive bargaining position of a union gives rise to its duty of fair representation. The requirement that an employee exhaust his contractual remedies before bringing an action against an employer under a collective bargaining agreement is designed to prevent actions which undermine the union's authority. The furtherance of industrial peace through employee organization and collective bargaining—the stated goal of the National Labor Relations Act, 29 U.S.C. § 151—would be thwarted by an employee's ability to circumvent procedures over which the union has control. The same considerations do not necessarily apply, however, when one who has never been an employee and to whom no reference is made in the provisions for grievances and arbitration seeks to enforce rights allegedly acquired through the death of an employee.

Though we have found no case directly in point we note that the Supreme Court has implied that one in plaintiff's position has two avenues of recourse available without regard to acts or omissions of the union, which is under no statutory duty of fair representation to her. *See* Chemical Workers v. Pittsburgh Glass, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). There it is indicated that a retired person who is no longer a member of a bargaining unit may either sue at common law under established contract principles or pursue a federal remedy under Section 301 of the Labor Management Relations

Act, 29 U.S.C. § 185, for breach of contract. An examination of plaintiff's complaint and amended complaint indicates that her action was originally framed as one by a third party beneficiary to recover under a contract. Though she added the charge in her amended complaint that the union had acted arbitrarily, this was not the basis of her claim for damages. Since the union had taken certain actions on her behalf she could anticipate the defense of failure to exhaust internal procedures without being required to rest her whole case on her ability to satisfy this requirement. She was entitled to a more liberal construction of her pleadings in light of Rule 8(e), Fed.R.Civ.P.; *See* J. Moore, Federal Practice, ¶ 8.14, pp. 1714–15. Substantial justice will be achieved by permitting Mrs. Hazen to proceed on her original theory. Rule 8(f), Fed.R.Civ.P.

Upon remand a number of issues, some of which are factual, must be decided. For example, the record is not complete with respect to the 1950 "agreement" relied on by Western Union. The collective bargaining agreement in force in 1972 made no reference to the 1950 agreement. If this agreement was effective and did affect the right of Richard Hazen to receive a notice of force-reduction furlough, the further question remains whether eligibility for severance pay and the other options provided in Article 24 depends upon the receipt of a notice of force reduction or merely upon the fact that force reduction has taken place because of the closing of an office. Beyond these questions it must be determined how the provisions of Section 23.07 apply in the case of an employee who dies before he has exercised an option under Article 24.

■ We conclude that this case was not a proper one for summary judgment. The issue raised by the defendant of plaintiff's failure to exhaust internal union remedies or show that it would have been fruitless to attempt to do so did not constitute a valid defense to the plaintiff's claim as pled. Rule 56 requires that the pleadings be considered along with other documents in deciding a motion for summary judgment. An examination of the pleadings in this case reveals the existence of genuine issues of fact and law. This precludes a holding that the defendant was entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.